Sid **MERCHANT** et al., Appellants,

v.

**FARMERS INSURANCE GROUP,**
Appellee.

**No. 4934.**

Court of Civil Appeals of Texas,
Eastland.

Aug. 12, 1976.

Rehearing Denied Sept. 2, 1976.

Robert G. Chappell, Sam Moore, Robinson, Hanna, Burke & Moore, Inc., Nelson Quinn, Quinn & Price, Abilene, for appellants.

Allen D. Glenn, Glenn & Thomas, Abilene, Alvin Walvoord, Jr., Stubbeman, McRae, Sealy, Laughlin & Browder, Midland, for appellee.

WALTER, Justice.

J. C. White recovered a judgment against Charles Cozby and Gene Scott for $5,000.00 actual and $2,500.00 exemplary damages in connection with the purchase by White of a Caveman motorhome from Cozby.

Gene Scott has appealed and contends there is no evidence to support the jury finding that he was connected with Cozby in the fraudulent sale of the motorhome. Special Issue No. 5 and the jury's answers are as follows:

"Were Charles Cozby and Gene Scott connected in any way in any false representation in the sale of the motor home, either by commission, knowledge and procurement, or by authority and consent? Indicate your answer by a 'yes' or 'no' answer in the appropriate space provided.

| | CHARLES COZBY | GENE SCOTT |
|---|---|---|
| 1. COMMISSION | YES | YES |
| 2. KNOWLEDGE AND PROCUREMENT | YES | YES |
| 3. AUTHORITY AND CONSENT | YES | YES " |

White purchased the recreational vehicle from Cozby with the proviso he would be furnished good title. Seller was not able to deliver title. A Texas Ranger took the motorhome from White and informed him it had been stolen from Vivian N. Todd of Grants Pass, Oregon.

White contends:

"There was legal evidence connecting Gene Scott with Charles Cozby *in false representation in the sale of the motor home to J. C. White.*" (Emphasis added)

He asserts the following evidence "indicates Cozby and Scott combined in the venture":

"1. The $2,000.00 personal check made payable to C C Motors with a first endorsement by Charles Cozby and then endorsed by Gene Scott.

2. Charles Cozby directed that J. C. White cause the Abilene Savings and Loan check for $3,000.00 to be made out entirely to Gene Scott.

3. Charles Cozby told J. C. White during the negotiations for the motor home that Gene Scott is "in on it with me";

4. The motor home was parked in front of the Gene Scott home and hooked to electricity there, which indicated the exercise of some ownership rights;

5. When J. C. White confronted Gene Scott about not getting the Certificate of Title, Gene Scott offered to see about getting it, indicating, at least, knowledge of the deal.

6. That even though Charles Cozby had no access to the books or letterhead of Gene Scott, he furnished a fictitious receipt which was written on Gene Scott's letterhead for the $3,000.00 Abilene Savings and Loan check."

 The testimony of White that Cozby told him Scott was "in on it with me" is hearsay as to Scott and amounts to no evidence. The other items outlined above fall short of constituting evidence of probative value to establish Scott acted with Cozby "in any way in any false representation in the sale of the motor home."

We have considered the entire record and hold the finding that Scott was connected with Cozby in any false representation in the sale of the motorhome either by commission, knowledge and procurement, or by authority and consent is against the great weight and preponderance of the evidence. *In Re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

The judgment, in so far as Scott is concerned, is reversed and rendered that White take nothing from Scott. It is further ordered that Scott recover no interest in the motorhome.